Okay, this is case number 4-14-0278, People v. William Chestnut, we'll call it. It's the attorney McGurl, say that again? McGurl. McGurl, is here on behalf of the appellant and attorney majors, is here on behalf of the appellee. Ms. McGurl, you may proceed. Thank you. May it please the court? Counsel? Your honors, counsel, this case is the appeal of a termination of parental rights. Parental rights have historically been one of the most protected rights individuals have. And in this, to reverse a finding of unfitness, the appellate court must find that the trial court's finding was against the manifest weight of the evidence. And in this case, I believe it was. The natural father was acknowledged by the trial court even to be a man who loves his children. There was evidence regarding that. And in the first nine-month period after the adjudication and removal, the natural father did everything he could to make both efforts and reasonable progress toward reunification with his children. He underwent the required mental health assessment before he was subsequently incarcerated. The natural father was incarcerated for much of the time of the nine-month period. In fact, I believe for approximately eight months of the nine-month period. During that incarceration, services were unavailable to him. The required services under the service plan were not offered in the facility in which he was housed. He requested and attempted to enroll in classes while he was in the Pittsfield work camp. Additionally, during his incarceration, while he was unable to take the classes that were recommended by the service plan and required by the service plan, he did write regularly to the caseworker inquiring as to the welfare of his children. He additionally wrote periodically to the court as well. In Re C N states there are grounds for termination when there is a service plan and the recommended services were available to the parent and no progress or effort was made by the parent toward reunification. In this situation, the natural father did not have services available to him. The several prong fails because the services were simply not available. The prison in which he was incarcerated did not offer the classes required, although he did attempt to enroll in them. He was eventually moved to a prison that did offer the classes, but because he was in the infirmary, he was unable to participate in those classes. The Supreme Court stated in N Re J L, there is no exception to the statute to the nine-month progress period for an incarcerated parent. However, that case did not deal with a situation that was at all similar to Mr. Chestnut's case. The case at issue in N Re J L can easily be distinguished because the natural mother was incarcerated and was actually able to avail herself of services while she was incarcerated. In that case, after she was released from prison, she began failing to comply. In many ways, this is the complete opposite of Mr. Chestnut, as during his incarceration, he attempted to undergo and comply with the service plan, but he was unable to. Immediately upon his release, however, he began availing himself of those services. As soon as the services were made available to him, he began diligently cooperating and complying with the service plan. While J L states there is no exception to the nine-month service period, I think it needs to be considered with the opinion in Re C N, which requires consideration of all of the conditions that led to the removal, as well as those that came to light after the removal. I think in this case, Mr. Chestnut's incarceration qualifies as one of those conditions which must be considered when measuring his reasonable progress and reasonable efforts. He was housed in a location that did not offer services, and the condition of his incarceration led to the unavailability of services. Again, during the second nine-month period, he was incarcerated the majority of that period, and services remained unavailable to him. He was released in November, and during the last third of the nine-month period, he began availing himself of services. In fact, he contacted his caseworker immediately upon his release, and by the date of trial, he had completed several of his domestic violence classes and was scheduled for parenting classes, which had been unavailable prior to the first hearing. At trial, the caseworker indicated she was unable to schedule the classes prior to the January hearing. This is another case where the service plan existed, but the services were simply not made available to the father. The Supreme Court states that when measuring reasonable progress and reasonable efforts, the dynamics of the circumstances must be considered, and I think in this case, that is especially important. As soon as he was able to have services available to him, Mr. Chestnut made every effort to complete those services and to comply fully with the service plan. He was in contact with the caseworker. He continued moving toward his goal, which was reunification, even after the goal was changed. He even went beyond the service plan and beyond what was recommended by the service plan in voluntarily submitting to a mental health evaluation. I think these actions all show, add together to demonstrate, that he did make significant effort and progress to correct the conditions that led to the removal of the children as soon as he was able to avail himself of those services. And I think part of the requirement for reasonable progress and reasonable efforts is that the services were available. When the services were not available, he still made effort to cooperate with the caseworker. He remained in contact with her. He updated her as to his address. He attempted to find out and remain as involved with his children as he could, despite his incarceration. The C.N. Court stressed the opinion the legislation would not want to allow an unjust outcome. And therein the Illinois Supreme Court stated reasonable progress encompasses not only compliance with the service plans and the court's directives in light of the conditions which gave rise to removal, and in light of other conditions which later become known. And that would prevent the court from returning custody. In this case, that is exactly what the incarceration was. This is not at all like the J.L. case and should be considered differently. With regard to the finding of depravity, the State presented certified copies of felony convictions, the last of which was within the specified time frame to establish the statutory presumption of depravity. The statutory presumption is a rebuttable presumption. And once it arises, the natural father, the natural parent, then has the opportunity to rebut the presumption by offering contrary evidence. In Ray J.A. sets forth the analysis for proving depravity. And under that analysis, once evidence is presented opposing the presumption, the burden then shifts back to the State to prove depravity by clear and convincing evidence. As the presumption ceases to exist at that point, and it's as though there was no presumption. Beyond the presentation of the certified copies of the natural father's felony convictions, the State offered no evidence regarding his depravity, which does not automatically support a finding of depravity. According to the First District in J.A., the effect of a rebuttable presumption is to establish what will prevail if no contrary evidence is presented. In this case, there was contrary evidence presented. What did it consist of? The evidence was demonstrable change. What was the evidence? A couple of witnesses testified. And they said he seems to be a different person. He's got his head on straight. What weight would a trial judge give to that? I believe whatever weight he indicated was due, he thought was due. It would be based upon his observation and the credibility of the witness. He apparently was not impressed. No, Your Honor, it was Judge Wollehan. It was difficult to keep track of the judge. Those witnesses saying he seems to have gotten his life in order or head on straight or whatever, he's got a rather long history of antisocial behavior. Yes, Your Honor. However, I think that merely accepting the certified copies is not sufficient. I believe the State should have been required to present evidence of the depravity, and I don't believe they did. Well, they presented evidence of why he was in custody, because he tried to elope with his children. The court had that evidence, did it not? And nothing those witnesses testified to rebutted the fact of the convictions, but rather said, we think he's changed. Yes. Additionally, I believe the requirement is that depravity be shown by clear and convincing evidence at the time the petition to terminate was filed. The last evidence that they had regarding the depravity would have been the most recent felony conviction. I don't believe it demonstrates an ongoing unwillingness or inability to conform to moral standards. And in fact, I believe if by no other evidence it can be shown by the compliance with the service plan that he was both willing and able to comply with moral standards. Regarding the claim of ineffective assistance of counsel, in this situation the natural father was represented by three different attorneys in front of three different judges during the course of his case. He was unable to appear at the majority of those hearings because counsel did not request his appearance at the review hearings. While the state argues that this would not have been prejudicial because those hearings didn't mean much, I would argue that they did mean quite a bit and would have established prejudice. Each of those hearings he was unable to demonstrate his efforts. At each of those points he was unwilling to make further efforts to request visitation with his children, to request contact, or to request additional services. And I believe that is prejudicial when the court is determining a permanency goal. Had he been in attendance, his interest would have been better represented to the court. And each of the review hearings he was denied access to led to the ultimate filing of the petition to terminate rights despite his best efforts, despite his reasonable progress. The hearing at which he was not represented in any capacity also led to this. I believe it's impossible to say he was not substantially prejudiced by the ineffective assistance he had throughout this hearing. However, if you look at their brief and their reply brief, the argument one is reasonable progress, argument two is reasonable progress, argument three is depravity. Argument four is ineffective assistance to counsel. Go to the reply brief. Same thing, reasonable progress, reasonable progress, depravity, ineffective assistance to counsel. They never raised the trial judge's finding that he failed to make reasonable efforts. I think that's been forfeited by now. Even if you believe that the state's evidence was insufficient for the two periods of reasonable progress, we still have efforts, which I submit is unchallenged, and we still have depravity. I disagree with counsel's statement that any kind of evidence rebuts depravity. In this case, we had the defendant's sister, who was the same woman who was involved at the adjudicatory hearing, who was involved, I think, in pressuring the mother to sign some type of a letter saying that she was responsible for everything and the respondent was completely innocent. The record is packed with incidences of the respondent intimidating and physically harming the mother and her sister. In fact, he was convicted of I think punching her pregnant sister while she was holding one of these minors. And he admitted that he was in on this attempt early in the case to help the mother escape the jurisdiction with the children, as did his wife, who is a witness showing that he's no longer depraved. So we got her, which I submit her testimony is not worth much. We have a woman he's known for several years, and we have his niece. And as Justice Kinect has already pointed out, they didn't say much. They just made some general statements saying, yeah, he's changed. I don't think that was enough to rebut depravity. So regardless of what this court finds concerning reasonable progress, we still have efforts and we still have depravity, and this court has said countless times one ground is enough. As to the ineffective assistance of counsel, I was comparing notes with counsel. She was very courteous, and I think we agree that from May of 2012 to March of 2013, Respondent was represented by Mr. Bauer, B-O-W-E-R. And the only reason that he was released is a motion to withdraw based on Respondent's lack of cooperation. And that's unrebutted in the record. So that withdrawal was based on Respondent not cooperating. And then Mr. Wessel was appointed. And that was about two weeks after Defendant sent a letter to the trial judge saying I want a lawyer appointed. And then Mr. Wessel was representing him from April 13 to May of 2013. And then we have present counsel who announced ready. And they said what do you want to do, counsel? Let's go. Let's have the termination hearing. Okay, and they had it. And then at the best interest hearing, counsel said let's go. Let's get it over and let's do it. So now they come up here and say they're ready for the unfitness hearing and the best interest hearing. They don't challenge reasonable effort and come up and say well, he received ineffective assistance of counsel because back in March of 2013, he wanted to come to a permanency review hearing and he was in prison and nobody brought him in. And this threw the whole case. And at that hearing the goal was set return home. And the next hearing was in August of 13 and again the judge set the goal as return home. So these two hearings nothing changed. So the second problem, Strickland says there must be a reasonable, not any, not a probable, not a guess, a reasonable probability that you would have a different result. Where is it? You know, it's not here. If it was there, why didn't you raise it before the unfitness hearing? Why didn't you raise it before the best interest hearing? Why wait from August this hearing that is so important until now? I'll try to answer the court's questions. It's on page, I'd have to dig around, judge, yes. My answer is yes. It's I think at the end of argument two. And I'm on page 15 of my brief. The state notes that the trial court also found that respondents failed to make reasonable efforts, but this finding has not been challenged. Okay, and that's in your section on reasonable progress. Yes, your honor. Any other questions? Yes, your honor.  Yes, your honor. May it please the court and counsel? Just briefly, your honor, with respect to the reasonable progress and reasonable efforts forfeiture, I also addressed that in my brief. I believe that my argument demonstrates both progress and efforts that were made. And on page four of my reply brief, it is addressed as well. Additionally, even if there is forfeiture, the court is allowed to consider the argument. I don't believe it should be forfeited. I believe the argument remains the same, that the reasonable progress that was made was a result of reasonable efforts. And I believe it should be considered the same. Your honor, briefly, I would just add that this is a case which bounced through several judges, through several attorneys. And I believe this is a case where a system that is imperfect did not work, resulting in termination of parental rights, which was against the manifest evidence. And I would ask that the termination be reversed. Thank you, counsel. The court will be in recess.